George H. ELDRIDGE, Plaintiff,

v.

Casper WEINBERGER, Defendant.

Civ. A. No. 72-C-167-A.

United States District Court,
W. D. Virginia,
Abingdon Division.

April 9, 1973.

Carl E. McAfee, Donald E. Earls, Cline, McAfee, Adkins & Gillenwater, Norton, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

---

## OPINION and ORDER

TURK, District Judge.

This action challenges the constitutionality of the procedures employed by the Secretary of Health, Education and Welfare to terminate disability benefits. The merits of plaintiff's claim that he is disabled are not before this court since he has not exhausted his administrative remedies, but has instead chosen to challenge the procedures for terminating disability payments as being repugnant to the due process requirements of the Fourteenth Amendment of the United States Constitution. Specifically, plaintiff contends that he should have been afforded an evidentiary hearing prior to the termination of his disability benefits.

The material facts in this case have been set out in an affidavit from the Director of the Bureau of Disability Insurance of the Social Security Administration. On June 2, 1968, following the presentation of evidence before a hearing examiner, George Eldridge, plaintiff in this case, was awarded disability benefits under sections 216(i) and 223 of the Social Security Act. He was advised that the award would be reviewed in June, 1969, to determine if he was still disabled. On February 18, 1970, a determination was issued that his disability had ceased as of January, 1970, and benefits were terminated. Plaintiff requested a reconsideration on April 11 and April 23, 1970, and on August 27, 1970, filed suit in this court seeking an administrative hearing prior to the termination of benefits. This court, on June 26, 1970, ordered that payments be continued during the pendency of plaintiff's claim. Following a reconsideration determination adverse to plaintiff, a hearing was held on March 17, 1971, and a hearing examiner concluded that plaintiff's disability had not ceased prior to that date. This decision was effectuated on April 30, 1971, and this court dismissed the aforementioned suit on grounds of mootness.

Plaintiff's case was again scheduled for review the following year for possible medical improvement. On March 20, 1972, the Virginia State Agency sent a questionnaire to plaintiff concerning his continued eligibility for disability payments. He indicated that his condition had not improved and listed medical sources where he had recently received treatment. The State agency received a medical report from plaintiff's physician on April 24, 1972, and a psychiatric consultant submitted a report on May 12, 1972. Then on May 16, 1972, the State Agency advised plaintiff that the medical evidence in his case indicated that he was able to work as of May, 1972. This notice explained the reasons for the conclusion that he was no longer disabled, advised him that a reasonable time would be granted for him to obtain and submit additional information, and enclosed an envelope in order that addi-

tional information relevant to his claimed disability could be fowarded. Plaintiff was advised that under the Social Security Law benefits would be paid for the month in which it had been determined that he regained the ability to work plus two additional months.

On May 25, 1972, plaintiff responded to the letter from the State Agency by advising that he felt that there was already adequate evidence to prove his disability and that it should proceed to decision on the evidence. On June 12, 1972, the Bureau of Disability Insurance of the Social Security Administration approved the State Agency's findings that plaintiff's disability had ceased as of May, 1972, and that benefits would terminate after July, 1972. Plaintiff was notified of this initial determination on July 7, 1972, and advised of his right to request review by the Social Security Administration within six months of that date. Plaintiff began the present action in this court on August 3, 1972.

The procedures followed by the State Agency were set out in the Disability Insurance State Manual, the operating manual for State Agencies.[1] These policies and procedures became effective in accordance with revisions issued February 25, 1972. These procedures require notice by phone or mail to the recipient of disability benefits concerning the review of his disability. In cases in which the medical evidence conflicts with the beneficiary's assessment about the severity of his impairment, the beneficiary is given a brief summary of the evidence justifying a proposed adverse action and at least ten days in which to respond. Additional time may also be granted in order that the beneficiary can gather and submit additional evidence. The Claims Manual of the Social Security Administration contains provi-

sions which complement the above procedures of the Disability Insurance State Manual. There is no dispute that these procedures were fully complied with in the present case, and the only issue before this court is whether such procedures satisfy the minimum requirements of due process of law.

Plaintiff's contention that an evidentiary hearing is a constitutional prerequisite to the termination of disability benefits finds support in the companion cases of Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) in which the Supreme Court held that benefits received under Title IV (Aid to Families with Dependent Children) and Title I (Old Age Assistance) of the Social Security Act cannot be suspended or terminated without first giving the recipient adequate notice and an effective opportunity to defend by confronting adverse witnesses and presenting his own evidence and arguments orally. The defendant has sought to distinguish these cases arising under Titles I and IV of the Social Security Act from those involving disability benefits under Title II of the Social Security Act.

Following the decisions in *Goldberg* and *Wheeler*, the question of whether the due process requirements in those cases were applicable to disability beneficiaries was considered by at least two courts. In Messer v. Finch, 314 F.Supp. 511 (E.D.Ky.1970) and Wright v. Finch, 321 F.Supp. 383 (D.D.C.1971) three judge courts considered challenges to the constitutionality of section 225 of the Social Security Act, 42 U.S.C. § 425, which authorizes the Secretary to "suspend" payment of disability benefits if he believes on the basis of evidence submitted to him that disability may have ceased.[2] The court in *Wright* held that

---

1. The initial determination of cessation of disability is rendered by the State Agency (Vocational Rehabilitation) under an agreement with the Social Security Administration (through delegations from the Secretary) in accordance with section

221 of the Social Security Act, 42 U.S.C. § 421.

2. These cases involved the "suspension" of benefits under the statute, 42 U.S.C. § 425, whereas in the case before this court

a recipient of disability benefits must be given adequate notice and an opportunity to participate in termination proceedings prior to suspension. The court in *Messer* reached the opposite result. The Supreme Court noted probable jurisdiction in *Wright,* but because the Secretary had promulgated new regulations to be followed by the Social Security Administration in determining whether to suspend or terminate benefits, the court felt it appropriate to withhold a decision on the merits until the cases had been considered by lower courts under the new regulations. Accordingly, the decision of the three judge court in *Wright* was vacated and the case was remanded to the Secretary. Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972).

The new regulations referred to by the Supreme Court in *Wright* are those discussed, *supra,* that were applied to the termination of plaintiff's disability benefits in this case, and the question of whether these termination procedures meet the constitutional requirements of due process is squarely before this court.

In deciding whether the requirements of due process have been satisfied in this case, it is important to first recognize that due process safeguards vary with the rights sought to be protected. In Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L. Ed.2d 1230 (1961) the Supreme Court stated:

"(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation . . . what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action."

The court in *Goldberg* presented the issue in a similar manner as follows:

"The extent to which procedural due process must be afforded to the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L.Ed. 817 (1951) (Frankfurter, J. concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication." 397 U.S. 254 at 262–263, 90 S.Ct. at 1017–1018 (1970).

■ In balancing the government interest against the private interest in this case, the defendant has sought to distinguish the welfare recipient in *Goldberg* from the disability recipient in the present case on a number of grounds. It is argued that in the case of welfare recipients "need" was the legal criterion for benefits and "termination of aid pending resolution of a controversy may deprive an eligible recipient of the very means by which to live while he waits." 397 U.S. at 263, 90 S. Ct. at 1018. By contrast, according to the Secretary, the legal criterion for Title II disability benefits is whether the beneficiary continues to be "unable to engage in substantial gainful activity," 42 U.S.C. 423(d)(1), which obtains irrespective of need. This distinction is not persuasive for purposes of due process. Although disability beneficiaries are not by definition dependent on benefit payments for their livelihood, they are by definition unable to engage in substantial gainful activity, and to cut off payments erroneously may create a loss as "grievous" as that which concerned the Supreme Court in the cases of welfare and old age beneficiaries.

■ In any case, in the recent case of Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct.

---

an initial decision was made to terminate plaintiff's benefits. Hence plaintiff is not challenging the constitutionality of the statute but the procedures set forth in

the regulations for determining that his disability has terminated. 20 C.F.R. § 404.905(d).

1983, 32 L.Ed.2d 556 (1972) the Supreme Court specifically rejected a narrow reading of *Goldberg* that would limit the due process requirement of a prior hearing to cases involving necessities. *Fuentes* involved a challenge to Florida and Pennsylvania statutes which provided for the issuance of writs ordering state agents to seize a person's possessions simply upon an *ex parte* application of any other person who claimed a right to the goods and posted a security bond. In the earlier case of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) the court had held that a Wisconsin statutory scheme which permitted the freezing of ½ of the wages due an employee without notice or a prior hearing violated procedural due process. In *Fuentes* it was argued that *Sniadach* and *Goldberg* should be narrowly read as limited to cases involving absolute necessities. In rejecting a narrow reading of those cases the court stated:

"Both decisions were in the mainstream of past cases, having little or nothing to do with the absolute 'necessities' of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect. . . . While *Sniadach* and *Goldberg* emphasized the special importance of wages and welfare benefits, they did not convert that emphasis into a new and more limited constitutional doctrine.

Nor did they carve out a rule of 'necessity' for the sort of nonfinal deprivations of property that they involved." 407 U.S. at 88, 89, 92 S.Ct. at 1998.

The court in *Fuentes* also made reference to the case of Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) in which the court had held that there must be an opportunity for a hearing on the issue of fault before the license of an uninsured motorist could be suspended. The court in *Fuentes* noted that the drivers license involved in *Bell* did not rise to the level of a "necessity"

as in the cases of wages or welfare benefits but was nevertheless an important interest entitled to the protection of procedural due process. From the above case it is thus apparent that *Goldberg* is not distinguishable from the case at bar in terms of the criterion for benefits.

■ Defendant next argues that the nature of the evidence involved in the case of a disability recipient ("medical reports of highly probative value") justifies a different due process standard than in the case of welfare recipients where "rumor and gossip" are more likely to form the basis of an adverse decision. This argument has been somewhat refuted by the history of this case. Plaintiff was denied disability benefits on the basis of his written application and medical reports on two different occasions, but in both cases prevailed after being afforded an evidentiary hearing before a hearing examiner. It is true that the court in *Goldberg* stated that "(p)articularly where credibility and veracity are at issue, as they must be in many termination proceedings, written submissions are a wholly unsatisfactory basis for decision." 397 U.S. at 269, 90 S.Ct. at 1021. But the court also characterized the pretermination hearing as important "where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on the misapplication of rules or policies to the facts of particular cases." 397 U.S. at 268, 90 S.Ct. at 1020. There is no doubt that medical evidence may be conflicting, Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and the Secretary must exercise judgment in resolving the conflicting medical evidence. 20 C.F.R. § 404.1526. Thus there will be a resolution of factual issues in disability cases, and the exercise of subjective judgment to resolve conflicting evidence of a factual nature makes the value of a hearing self evident. But in addition, it is noteworthy that determinations of total disability are not exclusively a function of medical evidence. The four elements of

proof required for the establishment of a disability claim were set forth in Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962) as follows:

(1) the objective medical facts, . . .

(2) the diagnoses . . . of . . . treating and examining physicians on subsidiary questions of fact,

(3) the subjective evidence of pain and disability testified to by Claimant, and corroborated by his wife and . . . neighbors, [and]

(4) Claimant's educational background, work history, and present age.

There is no requirement that a disability under the Social Security Act be proven by "objective" medical evidence. Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968) ; Whitt v. Gardner, 389 F.2d 906, 909 (6th Cir. 1968). The testimony of the claimant or witnesses in his behalf may be crucial in establishing a disability.[3] See, Page v. Celebrezze, 311 F.2d 757 (5th Cir. 1963).

Also of relevance to the Secretary's argument that disability cases are distinguishable from welfare cases because of the nature of the evidence involved is the case of Fuentes v. Shevin, *supra.* In response to the contention that defendants could repossess goods without first affording plaintiffs a hearing in the case of a default in payments on a conditional sales contract the court stated:

"The right to be heard does not depend on an advance showing that one will surely prevail at the hearing. 'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' Coe v. Armour Fer-

tilizer Works, 237 U.S. 413, 424, 35 S. Ct. 625, 629, 59 L.Ed. 1027. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake. . . ." 407 U.S. at 87, 92 S.Ct. at 1997.

The court also stated:

"The issues decisive of the ultimate right of continued possession, of course, may be quite simple. The simplicity of the issues might be relevant to the formality or scheduling of a prior hearing. See, Lindsey v. Normet, 405 U.S. 56 at 65 92 S.Ct. 862, at 869. *But it certainly cannot undercut the right to a prior hearing of some kind."* 407 U.S. at 87, Fn. 18, 92 S.Ct. at 1998. (Emphasis added).

■ The Secretary's final argument in support of his position that a pre-termination hearing should not be required for disability recipients is that to require such hearings would result in vast disruption of the Social Security System. The Secretary has submitted evidence to show that to require pre-termination hearings would cause administrative inefficiency and result in substantial cost. The same arguments were made in *Goldberg,* but the court there held that the State's concern in preventing an increase in its fiscal and administrative burden was outweighed by the interests of welfare recipients in receiving payments and the State's interest that the payments not be erroneously terminated. The court recognized that some greater expense would be involved but felt that this could be reduced "by developing procedures for prompt pre-termination hearings and by skillful use of personnel and facilities." 397 U.S. at 266, 90 S.Ct. at 1019, 25 L.Ed.2d 287.

The Secretary asserts that under the present procedures the determination to cease paying disability benefits is made

---

3. For a discussion of the value of oral testimony and vigorous advocacy in disability cases and the somewhat vulnerable status of medical reports in such cases see, Haveland & Glomb, The Disability Insurance Benefits Program and Low Income Claimants in Appalachia, 73 W.Va.L.Rev. 109, 117–137 (1971).

initially by the State Agency after the Social Security Administration has conducted its investigation, and then by the Administration's Bureau of Disability Insurance on review, and this system could not accommodate a requirement of a pre-termination hearing. According to the Secretary, a pre-termination hearing would require that the beneficiary be allowed to participate in either the State Agency determination proceedings or the decision of the Bureau of Disability Insurance which is located in Baltimore. The Secretary asserts that this would require either that the beneficiary travel great distances or that federal officials travel to the area in which the beneficiary resides. Furthermore, to turn the decision-making function over to the Social Security Administration's local offices would require staffing these offices with individuals qualified to make vocational and medical judgments, would entail the duplication of personnel already staffing State Agencies, and would make uniformity and consistency in the administration of the program all but impossible. Hence, the Secretary concludes that the burden of a prior hearing is so great as not to be justified. This argument has been effectively met by Justice Brennan in his dissent from the refusal of the court to reach the merits of the case in Richardson v. Wright, 405 U.S. 208, 223, 92 S.Ct. 788, 31 L.Ed.2d 151 (1970). He there points out that there are currently post-termination hearing procedures provided, 20 C.F.R. §§ 404.917–404.941, and the Secretary could comply with the requirement for pre-termination hearings by merely changing the timing of the hearings. This was done in the case of welfare recipients after *Goldberg*, and there has been no showing that it could not be done here.

The Secretary initially asserted that a requirement of pre-termination hearings would result in losses of $16 million to the Social Security Trust Fund, but in a supplemental brief and affidavit this figure was increased to $45 million. The Secretary arrives at this figure by noting that in 1972 there were 39,078 cases in which an initial determination of cessation of disability were rendered and that the average monthly benefit in those cases was $325. The average cost of a hearing is estimated to be $400, and this cost is estimated to increase by 30% if hearings were held in every case due to the need for increased staff and available facilities. From these figures the Secretary argues that to provide prior hearings which would result in a delay in termination of benefits of 2 months would cost $45 million.

As was pointed out by Justice Brennan in Richardson v. Wright, *supra* 405 U.S. at 223–226, 92 S.Ct. 788, this figure is grossly inflated. He there noted that the Secretary has assumed that all beneficiaries will demand a prior hearing. The Secretary's own figures show that of the 39,078 cases in which determinations of cessation of disability were rendered in 1972 only 2,801 post-termination hearings were held. It is certainly possible that even a smaller percentage of disability beneficiaries would demand pre-termination hearings due to the fact that the new regulations provide for notice and an opportunity to respond in writing before termination.

Justice Brennan also noted that the Secretary assumes that all of those demanding hearings will lose, and that the Secretary will be unable to recover any of the benefits paid to beneficiaries pending the hearing. Both of these assumptions are unwarranted. Not only do a substantial number of persons demanding a hearing prevail, but the Secretary is directed to require a refund from the beneficiary or decrease future benefits in the case of an overpayment. 20 C.F.R. §§ 404.501–404.502. The Secretary also assumes that a pre-termination hearing would entail a two-month delay in the termination of disability benefits. But under current procedures benefits are paid for two months after a disability ceases, and it is hard to believe that it would take an additional two months (four months after an initial determination that disability had ceased) to have a hearing.

Finally, it can be noted that the Secretary has not taken into account the cost of present procedures which should be offset against the cost of new procedures. In short, the assumptions and omissions in the Secretary's analysis of the cost of requiring pre-termination hearings in disability cases make the $45 million figure almost meaningless. It is perhaps true that some additional cost will be entailed by the government in providing pre-termination hearings to those disability recipients who request it, but it does not appear that the government's interest in minimizing costs and maximizing administrative efficiency are of such overwhelming significance in this case as to outweigh the needs of the individual not to be erroneously found to be able to engage in substantial gainful activity.

What the Supreme Court said in a related area is worth repeating here in light of the Secretary's argument.

"A prior hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these rather ordinary costs cannot outweigh the constitutional right. See Bell v. Burson, *supra* 402 U.S. at 540–541, 91 S. Ct., at 1589–1590; Goldberg v. Kelly, *supra* 397 U.S. at 261, 90 S.Ct., at 1016. Procedural due process is not intended to promote efficiency or accommodate all possible interests; it is intended to protect the particular interests of the person whose possessions are about to be taken.

'The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.' Stanley v. Illinois, 405 U.S. 645, 656 92 S.Ct. 1208, 1215, 31 L. Ed.2d 551." Fuentes v. Shevin, *supra* at 90 Fn. 22, 92 S.Ct. at 1999, 32 L.Ed.2d 556.

In Bell v. Burson, *supra*, 402 U.S. at 540–541, 91 S.Ct. at 1589–1590, the court rejected the argument that the additional cost of an expanded hearing was sufficient to forego a hearing as to fault prior to the revocation of a drivers license. The court there stated:

"[I]t is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." 402 U.S. at 542, 91 S.Ct. at 1591.

In *Fuentes supra* 407 U.S. at 90–91, 92 S.Ct. at 1999, the court stated:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. Boddie v. Connecticut, 401 U.S., at 379, 91 S. Ct., at 786. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing."

It is the opinion of this court that the defendant has not demonstrated that the termination of disability payments is such an "extraordinary situation" that the basic notions of fairness encompassed in the due process clause should be excepted in this case. As has been previously noted the Supreme Court has required a prior hearing in cases of drivers license revocation, the repossession of goods under a conditional sales contract, the garnishment of wages, and the termination of benefits under Title I and IV of the Social Security Act. In addition, the requirements

**528**

of a prior hearing have been held applicable to cases of public housing tenancy being terminated. Escalera v. New York Housing Authority, 425 F.2d 853 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); Caulder v. Durham Housing Authority, 433 F.2d 998 (4th Cir. 1970), cert. denied, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971).

In light of prior hearing being required in cases of interests which are seemingly less substantial than receiving disability benefits this court can find no basis for considering disability payments such an unusual situation as to require a lesser due process standard.

For the aforementioned reasons and authority it is the conclusion of this court that the plaintiff in this case, as the recipient of benefits under Title II of the Social Security Act, must be afforded a hearing in the nature of that required for welfare beneficiaries under Title IV of the Social Security Act prior to the termination of his benefits.

The Secretary's motion to dismiss is denied and the case is remanded to the Secretary for the payment of disability benefits and for further proceedings not inconsistent with this opinion.