**Joseph A. SAURINO and Albert Silva, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Casper WEINBERGER, Individually and as Secretary of the United States Department of Health, Education and Welfare, Defendant.**

**Civ. A. No. 74–140.**

United States District Court,
D. Rhode Island.

June 3, 1975.

John M. Roney, Kenneth F. MacIver, Rhode Island Legal Services, Providence, R. I., for plaintiffs.

Lincoln C. Almond, U. S. Atty., Constance L. Messore, Asst. U. S. Atty., Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This is a class action[1] for declaratory and injunctive relief to require the defendant, Casper Weinberger, Secretary of Health, Education and Welfare, to afford plaintiffs Joseph Saurino, Albert Silva and other members of their class their alleged right to pretermination hearings under *Goldberg v. Kelly*, 397

---

1. The class involved in this case includes all persons considered "presumptively disabled" who received disability benefits under the state administered aid to the Aged, Blind and Disabled program during December of 1973 but whose payments began on or after July 1973. This is a proper class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Court finds that the entire class of "presumptively disabled" in Rhode Island is so numerous that joinder of all persons is impracticable; questions of law and fact are common to the class; the claims of plaintiffs Saurino and Silva typify the claims of the entire class; the plaintiffs will fairly and adequately protect the interests of the class, and the defendant Casper Weinberger has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole."

U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) before terminating their Supplementary Security Income (hereinafter referred to as SSI) benefits. 42 U.S.C. § 1381 *et seq.*

The defendant argues that plaintiffs have no right to a pretermination hearing because they were never certified as eligible for benefits under the SSI program. Defendant claims that SSI is a totally new federal program and that although plaintiffs were eligible under an earlier state-federal program of disability assistance, their eligibility terminated on January 1, 1974, the effective date for the SSI program and the date upon which the state-federal program was repealed.

This case is before the Court on cross motions for summary judgment and has been submitted for decision on a Stipulation of Facts.[2] A previous order of the Court establishing a class-wide Temporary Restraining Order remains in effect.[3]

### FACTS

Prior to January 1, 1974, persons in Rhode Island, who were aged, blind or permanently and totally disabled, and whose income and resources were insufficient "to maintain a reasonable standard of health and well-being," R.I.G.L. §§ 40–6–5, 40–6–6 (Supp.1974), qualified for a program entitled "Aid to the Aged, Blind and Disabled" (hereinafter referred to as AABD). This was a joint federal-state program of categorical assistance. *See* 42 U.S.C. § 1351 *et seq.* However, under P.L. 92–603, § 303, the federal authorization for the joint federal-state program, 42 U.S.C. § 1351 *et seq.*, was repealed as of January 1,

1974, and the SSI program was enacted as a replacement effective January 1, 1974. 42 U.S.C. § 1381 *et seq.* The SSI program provided that persons who were aged, blind or disabled under the definition in the statute (P.L. 92–603, § 1614; 42 U.S.C. § 1382c), and who met the income limitation provisions (P.L. 92–603, §§ 1611–1613; 42 U.S.C. §§ 1382–1382b), were eligible for benefits. The functions of the federally supported and state administered program, AABD (42 U.S.C. § 1351 *et seq.*), were transferred to the SSI program which was financed, administered and operated by the Social Security Administration of Health, Education and Welfare (H.E.W.) 42 U.S.C. § 1381 *et seq.* In addition under the new legislation, the state retained the right to offer higher benefits to its citizens by a written agreement executed between Rhode Island and the Secretary of H.E.W. On November 30, 1973 the federal government would also administer these state supplementary payments. P.L. 92–603, § 1616; 42 U.S.C. § 1382e. *See,* P.L. 93–66, § 212. *See,* Stipulation of Facts, Exhibit D.

Subsequently, a number of amendments to P.L. 92–603 were passed by Congress. Their sequence and content offer some assistance in the determination of how Congress intended persons in plaintiffs' class to be treated. In July of 1973, the Congress amended the provisions of the SSI program (P.L. 92–603) and provided that an individual would qualify for benefits under SSI,

" . . . if . . . for the month of December 1973 such individual was a recipient of aid or assistance under a State plan approved under title I, X, XIV, or XVI of the Social Security

2. This Court has jurisdiction over this case under 28 U.S.C. § 1361. The Court agrees with the analysis of Judge Harvey in *Brown v. Weinberger,* 382 F.Supp. 1092, 1095–1096 (D.Md.1974) and adopts it by reference. Alternatively, this Court also finds that it has jurisdiction under 5 U.S.C. § 701 *et seq.,* the Administrative Procedure Act, and 28 U.S.C. § 1343 for the reasons set forth in the decision of Judge Motley in *Lyons v.*

*Weinberger,* 376 F.Supp. 248, 254–257 (S. D.N.Y.1974).

3. There is also pending before this Court defendant's motion to dissolve or amend the classwide temporary restraining order entered July 19, 1974, and extended on July 25, 1974, by agreement of the parties until this decision on the merits. In view of the decision made in this opinion, the motion is denied.

Act, . . . " P.L. 93–66, § 211(b) Thus, under this amendment any person who in December 1973 was receiving AABD benefits (which was a state plan approved under title XIV of the Social Security Act, 42 U.S.C. § 1351 *et seq.*) would be automatically eligible for SSI benefits in January of 1974. This amendment providing for automatic eligibility was called the "grandfather" provision.

On December 30, 1973, two days before the SSI program was to go into effect, Congress amended the "grandfather" provision by passing P.L. 93–233. P.L. 93–233, § 9 provided that:

> "an individual shall . . . be considered to be disabled for the purposes of this title if he is permanently and totally disabled as defined under a State plan approved under title XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (*and for at least one month prior to July 1973*), so long as he is continuously disabled as so defined." (emphasis added)

Thus, in order to be "grandfathered" into the SSI program an individual had to have received AABD benefits "at least one month prior to July 1973;" otherwise, the individual would have to establish his or her eligibility for SSI by meeting the definitions in 42 U.S.C. § 1382c (P.L. 92–603, § 1614).

As a result of this amendment, those persons who received AABD aid one month prior to July, 1973, would be au-tomatically eligible for SSI, but those who qualified for AABD on or after July, 1973 were excluded from automatic benefits. The plaintiffs[4] and members of their class were those who fell into the latter category. They received AABD benefits during December 1973 but had not qualified for benefits prior to July 1973.

To meet the needs of those in plaintiffs' class, the Secretary of H.E.W. invoked authority provided to him in 42 U.S.C. § 1383(a)(4)(B) (P.L. 92–603 § 1631(a)(4)(B)) whereby he classified those persons in plaintiffs' class as "presumptively disabled" and continued payments to them pending a redetermination of their eligibility to receive such benefits on a permanent basis. However, the authority of the Secretary to pay such benefits to "presumptively disabled" persons was limited by the statute to three months. 42 U.S.C. § 1383(a)(4)(B); P.L. 92–603 § 1631(a)(4)(B). Congress then passed a special exemption from the three month limitation to those persons deemed "presumptively disabled" because they had received disability aid under AABD before December 1973 but after July 1, 1973. Under the exemption the Secretary was empowered to pay benefits for any month in the calendar year 1974 to such persons until a determination was made on whether those persons individually qualified for aid under the SSI guidelines. P.L. 93–256 (March 28, 1974).

In December 1973, notices of eligibility for SSI were issued by the Social Se-

4. Plaintiff, Joseph Saurino, was certified as disabled by the State of Rhode Island on or about November 1, 1973, and he began to receive monthly payments of $269.80 under the State AABD program operated by the Rhode Island Department of Social and Rehabilitative Services. Plaintiff Saurino is fifty-seven years old, married and suffers from arthritis, gout, arteriosclerosis and psychiatric problems. He is under the care of a medical doctor and psychiatrist and has not been gainfully employed since 1969.
As a result of injuries sustained in an automobile accident, Plaintiff Silva was certified as eligible for benefits under the Rhode Island Aid to Families with Dependent Children—Incapacitated (hereinafter referred to as AFDC–1) program in December of 1972. He was suffering from Meralgia Paraesthetica right leg and lumbar disc syndrome with residual radiculopathy and was transferred from AFDC–1 to AABD on November 30, 1973. He is thirty years old, married and has three minor children.
There are approximately 516 Rhode Island citizens, who are considered "presumptively disabled."

curity Administration (hereinafter referred to as SSA) to all Rhode Island residents on the AABD rolls at that time. This notice stated:

"This is a notice that you are eligible (or the individual named above, on whose behalf you applied, is eligible) to receive the Supplemental Security Income payment shown above, as provided in Title XVI of the Social Security Act.

You do not need to file an application to get supplemental security income. A gold-colored U. S. Government check for the amount shown above will come to you automatically about the first day of each month. This check will take the place of the checks you now get from your state or local public assistance office."

Stipulation of Facts, Exhibit B.

This notice made no distinction between those completely eligible and those "presumptively disabled." Subsequently, in January 1974, plaintiffs Saurino and Silva were converted from AABD to SSI. Plaintiff Saurino received a monthly benefit check for $269.80 [5] and plaintiff Silva and his wife, $276.00.

On March 21, 1974 each of the named plaintiffs was informed that he was ineligible to receive further SSI payments.[6] Neither plaintiff had received any prior notice that his SSI eligibility was being examined nor was he

---

5. Plaintiff Saurino's check included $74.80 from the State of Rhode Island presumably under the state supplementation contract and 42 U.S.C. § 1382e.

6. Form SSA-8955(3-74):
"After a careful review of your case, we have found that you are not eligible to receive supplemental security income payments under the provisions of Title XVI of the Social Security Act.
Under the law, because you had received a disability payment for December 1973 from a State or local public assistance agency, we have been able to send you supplemental security income payments (in a gold-colored check), but only until a decision about your eligibility could be made.
To receive any more checks, the law requires that:
1. You must have received a check for at least one month before July 1973 from a State or local public assistance office. These checks must have been paid because of a disability. (Checks paid to a family with dependent children do not meet this requirement); or
2. You must be disabled as defined under the Federal law. This means you must be unable to do any substantial gainful work because of a medical condition which has lasted or will last for at least 12 months.
We have carefully reviewed the evidence in your case and find that you do not meet either of these requirements. Because of this, we cannot send you any more supplemental security income checks.

An agency of your State will inform you of any change in your status for medical assistance (Medicaid) caused by this action. You may want to contact your State or local public assistance office for further information."
On the reverse side the form stated:
"Please get in touch with your social security office if:
—You have any questions about your claim.
—You wish additional information about your claim.
—You have to report a change that affects your payments.
Most questions and reports of changes can be handled by telephone or mail. If you visit your social security office, however, please take this notice with you.
*Your right to question the decision made on your claim*
If you do not agree with the decision shown on the other side of this notice, you can ask us to look at your case again. This is called a reconsideration of your case. If you want this done, you must tell us within 30 days from the date you receive this notice. Any social security office can help you with this. If you have more information or evidence which might help your case, you should give it at the time you ask for a review of your case. If you do not ask for this reconsideration of your case within the 30-day period, you cannot ask for any further review of your case."
This form was attached as Exhibit E (Saurino) and F (Silva) to the Stipulation of Facts.

given an opportunity to present any evidence of his disability nor was he given a hearing prior to the termination of his benefits.

Around March 27, 1974, plaintiff Saurino requested reconsideration of his case.[7] He was informed that an earlier decision of the SSA denying him eligibility for disability benefits under the Old Age, Survivors and Disability Insurance Program (hereinafter referred to as OASDI) and the denial's reaffirmation on reconsideration were binding on him. He was told that no reconsideration of his SSI eligibility would be held until after the hearing to review the denial of OASDI benefits.[8]

Plaintiff Silva also applied to the SSA for a reconsideration of his eligibility for SSI benefits. He was examined by a doctor selected by the Rhode Island Disability Determination Unit at government expense.[9] The decision of ineligibility was affirmed on May 30, 1974, and failed to inform plaintiff Silva of the specific medical facts upon which the determination was based.[10] Around

---

7. "Reconsideration is the process whereby a claimant is interviewed by a district office employee using an interview sheet containing questions to be answered by the applicant towards developing his problems with performing work activities in light of his age, education and vocational experience. The interviewer may also note his personal observations regarding the applicant. The district office employee reviews the applicant's case folder. District office personnel are responsible for all nonmedical development, for identifying all potential sources of medical evidence and for resolving conflicts in the evidence other than medical. They do not request additional medical evidence. The district office personnel then forward the claimant's case record and interview sheet to the state Disability Determination Unit (hereinafter DDU) which may request additional medical evidence. This process is the same for both OASDI and SSI applicants. In neither reconsideration process does the claimant appear before the state DDU."

Stipulation of Facts
Paragraph 12.

The DDU is a state agency which provides medical information under a contract to the SSA for use in the evaluation of each individual's eligibility under both OASDI and SSI.

8. The fact that plaintiff Saurino had been previously denied OASDI benefits should not alter the decision reached in this case because his right to a pretermination hearing is independent of any of the substantive reasons by which he was found ineligible for OASDI benefits. Facts adduced at the hearing to review the denial may have relevance at a hearing to determine whether SSI benefits should be terminated, but they are not relevant on the question of whether pre-termination review is required.

9. The reconsideration procedures followed in plaintiff Silva's case were the same as those employed in the reconsideration of plaintiff Saurino's denial of OASDI benefits. *See,* Footnote 6, *supra.*

10. Plaintiff Silva received the following letter from the Department of HEW, SSA:

"Mr. Albert Silva
13 Glenbridge Avenue
Providence, Rhode Island 02909
Dear Mr. Silva:

As you requested, your claim for supplemental security income checks has been thoroughly reexamined.

To get supplemental security income disability checks, you must be unable to do any substantial gainful work because of a medical condition which has lasted or will last at least 12 months in a row. Your age, education, training, and past work experience are also considered in this decision.

We have just finished another careful review of your case. We looked again at all your medical records and considered everything you told us about your condition. All of the evidence in your case shows you still do not meet the disability requirements of the law. Because of this, supplemental security income checks cannot be sent to you."

Stipulation of Facts
Exhibit G

On the reverse side of the form upon which the letter was typed the following information was given:

"*Your right to question the decision made on your claim*

If you believe that the decision shown on the other side of this notice is not correct, you may request a hearing before an Administrative Law Judge of the Social Security Administration. If you want a hearing, you must request it no later than 30 days from the date you receive this notice. You may make your request at a social security office. If you have informa-

June 20, 1974, plaintiff Silva requested a hearing on the question of his ineligibility before an administrative law judge.

Some of the members of plaintiffs' class may have received the notice set forth in the margin.[11] However, no evidence has been presented as to when this notice was mailed or to whom. At least 56 of the class of approximately 516 "presumptively disabled" Rhode Island citizens have been found ineligible for SSI benefits in a manner similar to that of plaintiffs Saurino and Silva.

### Procedural Due Process

In the case at bar, the plaintiffs contend that they have a statutory entitle-

ment in continued SSI benefits that cannot be terminated without procedural due process protections. Defendant, on the other hand, argues that plaintiffs have no property interest in SSI benefits inasmuch as they have never shown their initial eligibility for such benefits.

It is clear that prior to the Congressional enactment of the SSI program and repeal of 42 U.S.C. § 1351 *et seq.*, the plaintiffs, who were receiving benefits under the state approved AABD program, R.I.G.L. § 40–6–6, had a statutory entitlement to continued benefits. Thus, prior to termination of AABD benefits, the decisional law and the similarity of this case to those cited, *infra*, mandate that the state would have been

tion or evidence you have not given us before, please submit it with your request.
If you decide not to request a hearing within the 30-day period, you cannot ask for any further review of your case later. Please read the leaflet sent with this notice for a full explanation of your right to appeal."

11. *"THIS NOTICE CONTAINS IMPORTANT ADDITIONAL INFORMATION ABOUT YOUR SUPPLEMENTAL SECURITY INCOME PAYMENTS*
YOU ARE RECEIVING SUPPLEMENTAL SECURITY INCOME CHECKS BECAUSE YOU RECEIVED A DISABILITY PAYMENT FROM A STATE OR LOCAL PUBLIC ASSISTANCE OFFICE FOR DECEMBER 1973. HOWEVER, IN DECEMBER, THE FEDERAL LAW WAS CHANGED. IT NOW REQUIRES THAT TO BE CONSIDERED DISABLED UNDER THE SUPPLEMENTAL SECURITY INCOME PROGRAM:
1. YOU MUST HAVE RECEIVED A CHECK FOR AT LEAST ONE MONTH BEFORE JULY 1973 FROM A STATE OR LOCAL PUBLIC ASSISTANCE OFFICE. THESE CHECKS MUST HAVE BEEN PAID BECAUSE OF A DISABILITY. (CHECKS PAID TO A FAMILY WITH DEPENDENT CHILDREN DO NOT MEET THIS REQUIREMENT); OR
2. YOU MUST BE DISABLED AS DEFINED UNDER THE FEDERAL LAW.
OUR RECORDS SHOW THAT YOU DID NOT RECEIVE A DISABILITY CHECK BEFORE JULY 1973 FROM A STATE OR LOCAL PUBLIC ASSISTANCE OF-

FICE. THEREFORE, WE ARE NOW REVIEWING THE EVIDENCE IN YOUR CASE TO SEE IF YOU ARE DISABLED UNDER THE FEDERAL LAW.
THE AGENCY IN YOUR STATE WHICH WORKS WITH US IN MAKING DISABILITY DETERMINATIONS OR A SOCIAL SECURITY DISTRICT OFFICE MAY BE IN TOUCH WITH YOU IF ADDITIONAL INFORMATION IS NEEDED TO MAKE A NEW DISABILITY DECISION IN YOUR CASE. YOU ARE NOT REQUIRED TO DO ANYTHING FURTHER UNLESS YOU HEAR FROM ONE OF THESE OFFICES.
UNDER A SPECIAL PROVISION OF THE LAW, PAYMENTS WILL BE MADE WHILE WE ARE REVIEWING YOUR CASE EVEN THOUGH YOU HAVE NOT YET BEEN FOUND DISABLED. IF IT IS FOUND THAT YOU ARE DISABLED AS DEFINED BY FEDERAL LAW, YOU WILL CONTINUE TO RECEIVE SUPPLEMENTAL SECURITY INCOME CHECKS. IF YOU ARE NOT DISABLED AS DEFINED BY LAW, YOU WILL NO LONGER RECEIVE THESE CHECKS. YOU WILL BE NOTIFIED AS SOON AS WE REACH A DECISION IN YOUR CASE. WE WANT TO ASSURE YOU THAT THIS REVIEW WILL BE COMPLETED AS PROMPTLY AS POSSIBLE."

Memorandum of Defendant in Support of Defendant's Motion to Dissolve Temporary Restraining Order and Grant Summary Judgment for the Defendant, Appendix A.

required to afford plaintiffs a pretermination hearing. *See, Goldberg v. Kelly, supra; Eldridge v. Weinberger,* 361 F. Supp. 520, 523–524 (W.D.Va.1973) *aff'd,* 493 F.2d 1230 (4th Cir. 1974) *cert. granted,* 419 U.S. 1104, 95 S.Ct. 773, 42 L.Ed.2d 800 (1975). In addition, had the plaintiffs been certified as eligible for the SSI program by either meeting the eligibility requirements set forth in 42 U.S.C. § 1382c(a)(3)(A)–(E) or having received aid under AABD prior to July of 1973, they would also be entitled to a pretermination hearing prior to any reduction or discontinuance of their benefits. Stipulation of Facts, paragraph 2. *See,* SSI Handbook Transmittal No. 107, Stipulation of Facts, Exhibit A. Only those who were certified after July 1973, but before December 1973, are deemed to be ineligible for a pretermination hearing. The rationale for this conclusion rests upon the assumption that plaintiffs have no property interest in continued benefits because the SSI program is a wholly new legislative creation for which initial eligibility must be established. Any interest in AABD benefits by these plaintiffs is treated as having extinguished upon the effective date of the "new" SSI program.

■ The threshold inquiry of this Court must be to determine whether or not those in plaintiffs' class who were deemed "presumptively disabled" have the same or a similar interest in continued SSI benefits such that procedural due process protections must apply before their benefits are terminated. Critically, it is not the "weight" but the "nature" of the interest at stake that determines whether due process applies. *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ In *Board of Regents v. Roth, supra,* the Supreme Court set down several factors which should be considered in determining whether a benefit amounts to a property interest. It stated:

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709.

Application of these guidelines to the case at bar establishes that "presumptively disabled" persons have a property interest in continued benefits. In the first place, plaintiffs and all others "presumptively disabled" were receiving SSI benefits. The interest they assert in the present proceeding is very real: for plaintiff Saurino it is a check for $269.80 per month and for plaintiff Silva it is a check for $276 per month. This is not a case where plaintiffs assert a mere "abstract need or desire." Second, the plaintiffs had been receiving checks on a regular basis from at least December 1973 through March 1974. Each of the persons in plaintiffs' class was screened and determined eligible by the State of Rhode Island, the administrative agent for the joint federal-state program, AABD. Each of the persons in plaintiffs' class was notified by SSA that he did not need to file an application but would receive a check each month which would "take the place of the [AABD] checks you now get from your state or local public assistance office." *See,* Stipulation of Facts, Exhibit B. This is certainly not the case of a "unilateral expectation." Third, since need was a criterion for AABD checks, R.I.G.L. §§ 40–6–5, 40–6–6, it would seem reasonable that plaintiffs relied upon the checks that they received whether they were called AABD

and issued by the state or SSI and issued by the federal government. In addition, inasmuch as the only notice they received prior to notice of their aid termination was a notice that they were *eligible* for continued benefits under SSI, it is equally reasonable that plaintiffs expected benefits to continue. Thus, this Court finds that under the factors enunciated in *Board of Regents v. Roth, supra,* the benefits plaintiffs received from AABD which were continued under SSI were a property interest which require due process protections. Admittedly, the plaintiffs' interest is somewhat less than that of a person who received AABD benefits for a longer period of time, i. e. prior to July, 1973. However, this merely goes to the "weight" of the interest and would only affect the type and amount of procedural protection due to plaintiffs. *Goss v. Lopez,* 419 U.S. 565, 576–577, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Morrissey v. Brewer, supra,* 408 U.S. at 481, 92 S. Ct. 2593; *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

> "[T]he length and consequent severity of a deprivation, while another factor to weigh in determining the appropriate form of hearing, 'is not decisive of the basic right' to a hearing of some kind. *Fuentes v. Shevin,* 407 U.S. 67, 86, 92 S.Ct. 1983, 1997, 32 L.Ed.2d 556 (1972). The Court's view has been that as long as a property deprivation is not *de minimus,* its gravity is irrelevant to the question whether account must be taken of the Due Process Clause. *Sniadach v. Family*

*Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (Harlan J., concurring); *Boddie v. Connecticut,* 401 U.S. 371, 378–379, 91 S. Ct. 780, 786, 28 L.Ed.2d 113; *Board of Regents v. Roth, supra,* 408 U.S. p. 570 n. 8, 92 S.Ct. [2701] 2705." *Goss v. Lopez, supra,* 419 U.S. at 576, 95 S. Ct. at 737.

The termination of AABD and SSI benefits is not *de minimus* and requires procedural due process protection. *See, Goss v. Lopez, supra* at 576, 95 S.Ct. at 737 (10-day suspension from school); *Fuentes v. Shevin, supra,* 407 U.S. at 86, 92 S.Ct. 1983 (1972) (statutory replevin); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (suspension of motor vehicle operator's license); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 342, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring) (wage garnishment).

The foregoing analysis is not meant to imply that whenever a person receives "presumptively disabled" status he or she automatically has a statutory entitlement.[12] Rather the scope of this opinion is limited to those who are considered "presumptively disabled" by virtue of their having received aid during December, 1973 but not before July, 1973.

In reaching this conclusion, this Court specifically rejects defendant's argument that the SSI program is wholly new and independent requiring plaintiffs to establish their initial eligibility before their interest may be deemed a statutory entitlement sufficient to invoke due process protection.

The legislative history of P.L. 92–603 reveals that the SSI program was a part

---

12. In the future, the Secretary should have the flexibility of extending SSI benefits under 42 U.S.C. § 1383(a)(4)(B) to individuals, who have not yet qualified for those benefits, to meet their special and emergency needs without incurring the burdens of a pretermination hearing. In those instances, the Secretary would presumably make it clear to the applicant that such benefits would terminate at the end of three months in the event that that individual fails to qualify for SSI under the definitions in the Act. 42 U.S.C. § 1382c. The plaintiffs' case is unique to the transitional period between the phase-out of AABD and full implementation of SSI. This decision addresses only plaintiffs' unique situation and does not make any general holding applicable to all future "presumptively disabled" persons.

of "a basic restructuring of the national welfare system." 3 U.S.Cong. & Admin. News at 4989 (1972). Its specific purpose was to

> ". . . substantially improve the effectiveness of the adult assistance programs under the Social Security Act by providing . . . for replacing the three present State-administered programs of assistance to the aged, blind, and disabled with one combined adult assistance program which would be Federally administered by the Social Security Administration and would have nationally uniform requirements for such eligibility factors as the level and type of resources allowed and the degree of disability or blindness; . . ." *Id.* at 4992.

Thus, the SSI program was intended to be a relacement and not necessarily a wholly new program.

Basic to the defendant's argument is the assumption that Congress intended to restrict SSI eligibility to only those who specifically qualified for the SSI program under SSI definitions of eligibility. This assumption, however, is empirically denied by the fact that all persons who received AABD benefits prior to July of 1973 were automatically "grandfathered" into the SSI program with no requirements that their eligibility be reviewed under the "new" SSI definitions. In addition, the benefits paid for all those "grandfathered" into the SSI program and those deemed "presumptively disabled" were the same as those received under the AABD program. These facts indicate that SSI was built on the foundation of the pre-existing AABD program and no inference can be drawn that SSI was a break from the earlier program.

Defendant's argument also depends on the assumption that Congress specifically intended that those persons in plaintiffs' class were to lose all rights to any disability benefits upon the repeal of the AABD program and consequently, they were to be considered new applicants for the SSI program.[13] Subsequent Congressional action fails to support this assumption. After the defendant, Secretary of H.E.W., invoked the power granted by 42 U.S.C. § 1383(a)(4) to pay benefits to plaintiffs' class under the "presumptively disabled" classification, Congress not only ratified the action but expanded it by extending the period in which payments could be made from three months (42 U.S.C. § 1383(a)(4)) to one year, P.L. 93–256. In the House Report No. 93–871 which accompanied this action, Congress made a distinction between those considered "presumptively disabled" and "all new applicants filing for SSI." 2 U.S.Cong. & Admin.News at 2809.

Moreover, in passing the restriction to the "grandfather clause," Congress sought not to penalize the individual but to redress an administrative problem which arose out of New York State.

> "New York City is appare tly hastily examining all AFDC caretaker relatives for disability in order to place the maximum number on aid to the disabled. An article appearing in the New York Times of September 24,

---

13. It is important to note that this is the logical extension of defendant's argument. The Congress was silent about those caught in plaintiffs' situation. Had the Secretary not invoked the authority under 42 U.S.C. § 1383(a)(4), all those in plaintiffs' class would have been terminated from all disability benefits from AABD on December 31, 1973, with no prior notice or hearing.

It is instructive that the Secretary himself, who invoked the power to continue to pay to these persons benefits under § 1383(a)(4),

now argues that these persons are no different than any others applying for benefits for the first time. Clearly, the very factors which must have motivated the Secretary in making the decision of "presumptive disability" for this class, persuades the Court to reject defendant's argument. This class had been receiving benefits under AABD and should not be placed in the same category as one who had never qualified for benefits under any program.

1973, indicated that 65 percent of the first 10,000 welfare mothers screened were found to have severe disabilities. New York City plans to test 250,000 welfare mothers in a ten week period. This transfer of AFDC mothers to APTD would shift the cost from the Federal-State AFDC program to the Federal SSI program, with higher Federal and lower State costs. To prevent such a costly development the committee bill would amend the grandfather provision for disability to provide that only those persons who had received aid to the disabled before July 1973, and who are on the rolls in December 1973, would be deemed disabled without having to meet the Federal definition of disability under the SSI program." S.Report No. 553 93rd Congress, 1st Session at 25 (November 21, 1973), accompanying § 123 of H.R. 3153 which became P.L. 93–233.

Congressional concern arose because SSI is totally financed by the federal government whereas AABD was funded by both the state and federal government. The purpose of the restriction was

". . . to prevent the conversion to the Federal program of persons who in months immediately prior to the January 1974 changeover to SSI may have been improperly placed on the State aid to the disabled rolls." House Report No. 93–871 accompanying P.L. 93–256, 2 U.S.Cong. & Admin.News at 2808.

Putting it another way, by the restriction on the "grandfather clause," Congress made it clear that those persons who were placed on AABD rolls just prior to the implementation of the SSI program should have their eligibility reviewed to screen out those improperly placed on SSI rolls by states seeking to avoid the financial obligation of paying for them under other relief programs. The purpose was not to deny these persons initial eligibility or a hearing before aid termination.

Even if this Court were to assume *arquendo* that the purpose of the restric-

tion was to attempt to deny plaintiffs their initial eligibility, the defendant's argument would still be unpersuasive. As observed in *Lyons v. Weinberger*, 376 F.Supp. 248, 260 (S.D.N.Y.1974), the government cannot

". . . be permitted to evade the requirements of Goldberg v. Kelly simply by transferring its public assistance programs to a new agency and, then, labeling terminations of welfare payments determinations of initial entitlements."

*See, Burris v. Weinberger*, 385 F.Supp. 412, 414 (M.D.Fla.1974). *Contra, Hannington v. Weinberger*, 393 F.Supp. 553 at 559–560 (D.D.C. February 25, 1975).

 On the basis of the foregoing legislative history and analysis, this Court holds that SSI was not a new federal program. It was merely a shift in the administration of disability assistance from a joint state and federal program administered by the state to a federally administered program with optional state financial supplementation. Plaintiffs and members of plaintiffs' class are not "new applicants" for SSI. In passing the time limitation in P.L. 93–233, § 9, as an amendment to 42 U.S. C. § 1382c(a)(3)(E), Congress intended that the eligibility of persons, who did not receive AABD benefits prior to July 1, 1973, be *reviewed* in light of the definitions given in § 1382c(a)(3). Congress was in effect giving the SSA notice that they intended that those in the "presumptively disabled" group should be the first to be reviewed. This indication of priorities was not intended to terminate benefits while the review process was occurring nor was it intended that those who received AABD after July 1973 be treated the same as new applicants for SSI. Since the "review" contemplated by Congress was not intended to be for initial eligibility, the plaintiffs should have been given a pretermination hearing in accordance with the procedures set forth in *Goldberg v. Kelly, supra* 397 U.S. at 268–271, 90 S. Ct. 1011.

"In effect, the determination of an individual's ineligibility under SSI produces the same 'termination' as did the caseworker's evaluation of ineligibility in Goldberg. As a result of Congressional action, plaintiffs were entitled to and did receive payments early in 1974 pending a decision concerning their eligibility. Before the Secretary acted, plaintiffs had a legislatively created right to these benefits." *Brown v. Weinberger*, 382 F. Supp. 1092, 1097 (D.Md.1974).

To plaintiffs the cut-off of disability benefits may be a loss as "grievous" as that of the welfare recipient. *Eldridge v. Weinberger, supra*, 361 F.Supp. at 523.

"Thus the crucial factor in this context . . . is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits." *Goldberg v. Kelly, supra*, 397 U.S. at 264, 90 S.Ct. at 1018 (original emphasis).

Furthermore, the government does not benefit from an erroneous termination in that

"[p]ublic assistance . . . is not mere charity, but a means to 'promote the general Welfare, and secure the

Blessings of Liberty to ourselves and our Posterity.' The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination evidentiary hearings are indispensible to that end." *Id.* at 265, 90 S.Ct. at 1019.

Since neither the government nor the plaintiffs would benefit from an erroneous aid termination, a balance of the interests involved offers no reason to deny a pretermination hearing to those "presumptively disabled." This Court has found that the vast majority of federal courts are seemingly in agreement with this position. [14]

Specifically, the defendant should apply the requirements set forth in his own regulations, 20 C.F.R. § 416, Subpart N, prior to termination of aid to plaintiffs and members of plaintiffs' class with the specific reasons and facts relied upon to support aid termination. *See, Brown v. Weinberger, supra*, 382 F.Supp. at 1099–1100.

For the reasons set forth above, the defendant's motion for summary judgment is in all respects denied. Plaintiffs' motion for summary judgment is allowed and a permanent injunction shall be entered accordingly. [15]

---

14. Permanent injunction issued: *Johnson v. Weinberger*, C.A. No. 74–852 C(3) (E.D.Mo. February 26, 1975); *Brown v. Weinberger*, 382 F.Supp. 1092, 1099 (D.Md.1974). Preliminary injunction issued: *Tatum v. Weinberger*, No. C 74–351 L(A) (W.D.Ky. January 15, 1975); *Morrison v. Weinberger*, No. 74–277 (D.Del. January 13, 1975); *White v. Weinberger*, No. C–74–222 (E.D. Wash. December 6, 1974) (request for reconsideration and modification of preliminary injunction denied, February 19, 1975); *Buckles v. Weinberger*, 387 F.Supp. 328, 330 (E.D.Pa.1974); *Burris v. Weinberger*, 385 F.Supp. 412, 414–415 (M.D.Fla.1974); *Atwater v. Weinberger*, No. C–74–243–D (M.D. N.C. September 17, 1974); *Ryan v. Shea*,

394 F.Supp. 894 (D.Colo.1974), *appeal docketed*, No. 74–1517 (10th Cir. 1974). Temporary Restraining Order issued: *Robinson v. Weinberger*, No. 1 P 75–54–C (S.D.Ind. January 31, 1975); *DeLao v. Weinberger*, Civ. 74–468–Phx CAM (D.Ariz. December 23, 1974). *Contra, Reed v. Weinberger*, No. C–74–936 (N.D.Ohio April 1975); *Hannington v. Weinberger*, No. 74–1015 (D.D.C. February 25, 1975).

15. The issue of retroactive payments, which was neither pleaded, briefed nor argued by the parties, is not considered to be in issue in this case.