**Joanne D. RYAN et al., Plaintiffs,**

v.

**Con F. SHEA, Executive Director of the Colorado Department of Social Services, et al., Defendants.**

**Civ. A. No. 74–M–459.**

United States District Court,
D. Colorado.

June 21, 1974.

---

Jon S. Nicholls and Tucker K. Trautman, Legal Aid Society of Metropolitan Denver, Frederick P. Charleston and Carolyn Lievers, East Denver Legal Services, John B. Kusic, West Denver Legal Services, Gene A. Lucero, North Denver Legal Services, John R. Holland,

Southwest Valley Legal Services, Denver, Colo., Joel V. Lumer, Jonathan D. Asher, Colorado Rural Legal Services, Inc., Greeley, Colo., Betty L. Nordwind, Arapahoe County Legal Aid, Englewood, Colo., for plaintiffs.

Douglas D. Doane and Charles B. Lennahan, Sp. Asst. Attys. Gen., Denver, Colo., for State defendants.

James L. Treece, U. S. Atty., Denver, Colo., for Federal defendant.

## PRELIMINARY INJUNCTION

MATSCH, Judge.

This matter is before the Court on a motion for preliminary injunction. Hearings were held on May 24, 1974 and June 12, 1974. Upon the evidence submitted at those hearings, the statements of counsel, the affidavits and pleadings filed herein, the following are the findings of fact and conclusions of law.

## FINDINGS OF FACT

Before January 1, 1974 persons in Colorado who were permanently and totally disabled and who were in financial need received payments under a Federal-State program of "categorical assistance" implemented by a Colorado statute and called "Aid to the Needy Disabled", (hereinafter "AND").

Public Law 92–603, approved October 30, 1972, to be effective January 1, 1974, repealed the categorical assistance program and established in Title XVI of the Social Security Act a program identified as the "Supplemental Security Income" Program (hereinafter "SSI"). To be eligible for SSI a person must be aged, blind or disabled with no more than a monthly income of $130.00 after exclusions and with resources less than $1500.00 after exclusions.

Individuals who would be ineligible because of excess resources or because they did not meet the definition of disability were "grandfathered" into the SSI program if they were receiving aid under a state plan in December, 1973 and if they met the definition of disability under the applicable state plan as in effect for October, 1972.

Public Law 93–66, approved July 9, 1973 added to this program a requirement that anyone who received aid under a state plan in December, 1973 shall receive a payment from the state supplementing the federal payment to the extent necessary to maintain that person's income at the December, 1973 level.

The Congress changed the SSI program again with Public Law 93–233, approved December 30, 1973. That statute altered the grandfather provisions to permit benefits to be paid to those who were qualified under a state plan only if the recipient met the disability definition in effect for such a plan in October, 1972 and who received aid under such a plan for at least one month prior to July, 1973. Accordingly, those who first received state plan aid after July 1, 1973 did not qualify for conversion to SSI and such persons would be required to meet the new standards set by the SSI program and a new determination of disability would be necessary for them.

This sudden alteration of a program which was to take effect on the following day caused the Social Security Administration to be confronted with an impossible task. A new determination of disability simply could not be made for all of the people affected. To meet this situation, payment of benefits was made upon the basis of presumptive disability for a period not to exceed three months. The Congress ratified and approved this procedure in these cases by the passage of Public Law 93–256, approved March 28, 1974, which gave the Social Security Administration authority to continue such payments through the entire calendar year of 1974 until the determination of eligibility was made as to each applicant. If an adverse determination is made, then payments to that applicant shall cease following the month of that determination.

The Colorado County Departments of Social Services sent notices with payment warrants in November, 1973 advis-

ing all AND recipients of the SSI program. (Exhibit A to affidavit of Jo B. Dedmon). That notice, approved by the Social Security Administration, advised those people that they would be eligible for SSI payments without the necessity of application and that such payments would come to them automatically.

In December, 1973 The Colorado County Departments of Social Services mailed to all AND recipients another notice advising them that they would be receiving two checks, one being the SSI payment and the other a public assistance check. This notice also advised that the purpose was to add Colorado's payment to the Federal program of $130.00 per month to make a total of at least $155.00 a month. (Exhibit B to affidavit of Jo B. Dedmon).

In December, 1973 a computer prepared notice of eligibility for SSI issued by the Social Security Administration was mailed to all Colorado residents for whom conversion data had been received. That notice advised that there need be no application to get SSI payments; that a gold colored U. S. Government check would come to the recipients automatically; that such check would replace the former payments received from the State or local public assistance office and that if the Federal check was less than the former payments, a public assistance office check would also be sent. (Exhibit C to affidavit of Jo B. Dedmon).

The first mailing of SSI checks was on or about January 1, 1974. Included with each check was a notice identifying the gold colored check as being an SSI check and advising the recipient that such a check would be received around the first day of each month "as long as you are eligible." (Exhibit F to affidavit of Jo B. Dedmon).

To accomplish the conversion to the SSI program, the Social Security Administration contracted with a State agency called the Colorado Disability Determination Unit (hereinafter DDU).

That agency mailed a form letter to advise individuals who were first entitled to AND payments between July 1, 1973 and December 31, 1973 that additional information would be required to make a disability determination. That letter included the following paragraph:

"The agency in your State which works with us in making disability determinations or a social security district office will be in touch with you shortly about the additional information needed to make a new disability decision in your case. You are not required to do anything further until you hear from one of these offices." (Exhibit G to affidavit of Jo B. Dedmon)

Beginning on or about May 16, 1974 DDU began mailing notices to all individuals whose cases were pending a medical determination under the provisions of P.L. 93-233. That notice advised of the change in the Federal law relating to rollback cases. It further advised that the record showed that the recipient of the letter did not receive a disability check before July, 1973 and therefore the evidence was being reviewed to see if the recipient was disabled under the Federal law. It then provided:

"The agency in your State which works with us in making disability determinations or a Social Security district office may be in touch with you if additional information is needed to make a new disability decision in your case. You are not required to do anything further unless you hear from one of these offices.

Under a special provision of the law, payments will be made while we are reviewing your case even though you have not yet been found disabled. If it is found that you are disabled as defined by Federal law, you will continue to receive supplemental security income checks. If you are not disabled as defined by law, you will no longer receive these checks. You will be notified as soon as we reach a deci-

sion in your case. We want to assure you that this review will be completed as promptly as possible." (Exhibit H to affidavit of Jo. B. Dedmon)

After an unfavorable disability determination has been made, a notice of ineligibility was mailed by DDU. That notice of change contained the following language on the front page:

"After a careful review of your case, we have found that you are not eligible to receive supplemental security income payments under the provisions of Title XVI of the Social Security Act.

Under the law, because you had received a disability payment for December 1973 from a State or local public assistance agency, we have been able to send you supplemental security income payments (in a gold-colored check), but only until a decision about your eligibility could be made.

To receive any more checks, the law requires that:

1. You must have received a check for at least one month before July 1973 from a State or local public assistance office. These checks must have been paid because of a disability. (Checks paid to a family with dependent children do not meet this requirement); or

2. You must be disabled as defined under the Federal law. This means you must be unable to do any substantial gainful work because of a medical condition which has lasted or will last for at least 12 months.

We have carefully reviewed the evidence in your case and find that you do not meet either of these requirements. Because of this, we cannot send you any more supplemental security income checks.

An agency of your State will inform you of any change in your status for medical assistance (Medicaid) caused by this action. You may want to contact your State or local public assistance office for further information."

The reverse side of the form contains the following language:

"Please get in touch with your social security office if:

You have any questions about your claim.

You wish additional information about your claim.

You have to report a change that affects your payments.

Most questions and reports of changes can be handled by telephone or mail. If you visit your social security office, however, please take this notice with you.

Your right to question the decision made on your claim

If you do not agree with the decision shown on the other side of this notice, you can ask us to look at your case again. This is called a reconsideration of your case. If you want this done, you must tell us within 30 days from the date you receive this notice. Any social security office can help you with this. If you have more information or evidence which might help your case, you should give it at the time you ask for a review of your case.

If you do not ask for this reconsideration of your case within the 30-day period, you cannot ask for any further review of your case." (Exhibit I to affidavit of Jo B. Dedmon).

There are 2,333 Colorado residents who first became entitled to AND payments between July 1, 1973 and December 31, 1973. Of that number, 1,082 cases have been processed and 562 persons have been determined to be eligible for SSI. 520 persons have been determined ineligible. Of that number, 14 have had their cases reconsidered and reversed.

By a separate order of this Court a class has been formed under F.R.Civ.P. 23(b)(2) consisting of all Colorado residents who became eligible for AND at any time between July 1, 1973 and December 31, 1973 excepting those who

have been determined to be eligible for SSI payments and those who have had a hearing on the question of their eligibility.

The Colorado AND program for which the plaintiffs were determined to be eligible prior to December 31, 1973 was a program receiving Federal funds pursuant to Title XVI of the Social Security Act. Participation in that program was optional with the State. The Colorado General Assembly gave statutory authority for Colorado to submit a plan which was approved by the Secretary of Health, Education and Welfare (hereinafter "HEW") resulting in Federal reimbursement of funds to Colorado under a statutory formula.

To be eligible for benefits under the Federal-State AND program, plaintiffs had to establish that they were permanently and totally disabled and that they were financially needy in that their available income and resources were below the standard of need which had been determined by the State under Federal and State law.

To establish a permanent and total disability a person had to show that he had "a permanent physical or mental impairment which is disabling, and which, because of other factors such as age, training, experience, and social setting, substantially precludes the person having such disability from engaging in useful occupations as a homemaker or as a wage earner in employment which exists in the community, for which occupations he has competence". 119-3-3(7) Chapter 340, 1973 Colorado Session Laws and the implementing of rules adopted pursuant to 119-1-7 C.R.S.1963 (CH. 340 § 1, 1973 Sess.L.). The determination of disability under the Colorado AND program was made by a State AND review team consisting of a physician and a program specialist based on medical information and social data on the individual. (Affidavit of John Baird.) If a person was determined to be eligible for AND benefits, he would receive monthly benefits for each succes-

sive month until he was determined to be no longer needy or permanently and totally disabled. If the State defendants or their agents proposed to terminate or reduce the person's AND benefits, they were required to give advance notice of the proposed termination and an opportunity for a hearing. If a hearing was requested within 15 days from the date of the notice, benefits were continued pending a decision made after a hearing. Prior to January 1, 1974, as a precondition for Federal funding, the State also was bound by a regulation of the Department of Health, Education and Welfare which mandated a prior fair hearing. See 45 C.F.R. § 205.10.

In 1973 the Colorado General Assembly enacted Chapter 340 of the 1973 Colorado Session Laws, which repealed and reenacted the Colorado Statutes on relief and public welfare. That legislation expressly provided that the program for aid to the needy disabled shall continue. (§ 119-1-8(9)(a)). Additionally, the legislature provided for the supplementary payments required by Title XVI of the Social Security Act. Accordingly since January 1, 1974, the State of Colorado has had its own AND program which is State funded. While the funding its different from the former Federal-State program, the Colorado General Assembly characterized it as a continuing program.

The procedure which has been and is now being followed for making the determination of Plaintiffs' eligibility is that the State Department of Social Services releases copies of its medical evidence and social summaries to the DDU. The DDU, consisting of 37 lay disability examiners and 15 licensed physicians, makes the determination of the sufficiency of that evidence to demonstrate disability under the Federal standard. A determination of ineligibility results in a notice of change as previously described.

After determination of ineligibility by DDU, that information was transmitted to the State Department of Social

Services to enable it to terminate the mandatory state supplement under the SSI program.

In some instances, DDU requested the recipient to provide further medical information. If such information was provided, it was considered in the DDU determination of eligibility.

The Department of Social Services adopted, as a matter of policy, the DDU determinations of ineligibility for SSI as determinations of ineligibility for the Colorado AND program. On April 1, 1974 the Department of Social Services received a list of 117 cases where recipients were determined ineligible for SSI. The Department of Social Services then sent notices of termination of AND benefits to those persons on or about May 8, 1974. That form of notice advised of the determination of ineligibility and advised of a right to appeal by submitting a request in writing to the State Department of Social Services within 15 days.

Some of the persons receiving that notice did appeal with varying results.

On or about April 5, 1974 an additional list of 229 persons who had been terminated from SSI benefits was sent to the State Department of Social Services and the Department has indicated its intention to advise county departments of social services responsible for those cases to reinstate those individuals as AND recipients and to obtain current medical and social data from the recipients.

## CONCLUSIONS OF LAW

This Court has jurisdiction over plaintiffs' First and Second Claims for Relief against State Defendants pursuant to 28 U.S.C. § 1343 in that plaintiffs have been denied rights guaranteed by 42 U.S.C. § 1983 and the fourteenth amendment to the United States Constitution.

This Court has jurisdiction over plaintiff's Fourth Claim for Relief against defendant Weinberger pursuant to 28 U.S.C. § 1361 and 5 U.S.C. § 702.

This action is a proper class action pursuant to Rule 23(b)(2) and has been

certified as such by order of equal date. The class is defined as all those Colorado residents who were determined to be eligible for AND benefits between July 1, 1973 and December 31, 1973, excepting those who have been finally determined as eligible for SSI benefits under Title XVI of the Social Security Act and those who have had a hearing on the question of their eligibility.

■ The actual and threatened terminations of AND and SSI benefits to plaintiffs require the meeting of procedural due process standards outlined in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) for the following reasons:

a. Plaintiffs became entitled to disability benefits when on the basis of factual showings of severe physical or mental impairments, they were determined eligible for AND by State Defendants and determined presumptively eligible for SSI by defendant Weinberger;

b. Plaintiffs' benefits were or are in danger of being terminated on the basis of factual determinations made or being made by defendants;

c. Said terminations will result in plaintiffs having to subsist on incomes less than have been established as the minimums needed for lives of decency and health.

■ Defendant Weinberger's actual and threatened termination of SSI benefits to plaintiffs is in violation of the requisites of procedural due process as outlined in Goldberg v. Kelly, *supra*, in the following respects:

a. Neither notice sent out by SSI notifying plaintiffs of the impending termination is adequate in that there is no reason for the finding of ineligibility given and there is no statement of plaintiffs' rights to dispute that determination through an evidentiary hearing prior to termination.

b. The SSI reevaluation procedure fails to provide plaintiffs with an adequate evidentiary hearing prior to ter-

mination of benefits with the rights to (i) confront and cross-examine adverse witnesses; (ii) submit evidence and establish all pertinent facts and circumstances in the case; (iii) examine all documents and records to be used at the hearing; (iv) be represented by counsel or a representative at such hearing; and (v) present witnesses on their behalf.

If plaintiffs are found eligible for SSI, State defendants are required to pay a mandatory State supplement of approximately $15.00 pursuant to § 212, P.L. 93–66 to certain recipients. 42 U. S.C. § 1382e and 20 C.F.R. § 416.2070, et seq. [38 FR 27412 (1973)].

If plaintiffs do not qualify for SSI, under Ch. 340, § 119–1–8(9), 1973 Colo. Session Laws, State defendants are required to pay plaintiffs AND benefits, based on State standards of need, so long as they continue to meet the need and disability eligibility requirements of that statute.

■ State defendants' actual and threatened terminations of benefits to plaintiffs is in violation of the requisites of procedural due process as outlined in Goldberg v. Kelly, *supra*, in the following respects:

a. The notice sent to many plaintiffs was neither timely nor adequate in that the notice post dated the termination and there was no adequate explanation of why plaintiffs were no longer eligible under the State AND statute.

b. The hearing process embodied in the notice, although adequate on its face, did not in fact provide plaintiffs with an opportunity for a hearing prior to the termination of benefits.

■ Plaintiffs have and will continue to suffer immediate, great and irreparable injury if this preliminary injunction is not granted in that there is a real potential for permanent impairment of the physical and mental well-being of Plaintiffs if they are deprived of assistance and services designed to provide them with the basic necessities of life.

Plaintiffs have no adequate remedy at law.

The balance of hardships is clearly with Plaintiffs when the irreparable injury of Plaintiffs is weighed against the possible adverse affects to Defendants.

Plaintiffs have a strong likelihood of ultimately prevailing on the merits of their First, Second and Fourth Claims for Relief.

It is therefore ordered, as follows:

1. That Defendant Weinberger the Secretary of Health, Education and Welfare, his successors in office, employees, agents and all other persons in active concert and participation with them, are hereby enjoined, pending final determination of this action, from withholding SSI benefits and services to Plaintiffs who have had those benefits terminated and from terminating SSI benefits of Plaintiffs without providing them with timely and adequate notice in the form set forth in Exhibit A and the opportunity for an evidentiary hearing as required by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) prior to said termination.

2. That Defendants Con F. Shea, Executive Director of the Colorado Department of Social Services; Charline Birkens, Deputy Director of the Colorado Department of Social Services and Director of the Colorado Division of Public Welfare; Margaret Marshall, Ernest J. Bloedorn, Manual M. Diaz, John L. Haley, James A. Henderson, Gail F. Ouren, Henry J. Tupper, William E. Anthony, and James H. Vincent, as constituting the Colorado Board of Social Services, their successors in office, employees, agents (including County Departments of Social Services) and all other persons in active concert and participation with them, are hereby enjoined, pending final determination of this action, from withholding the payment of the Mandatory State Supplement to Plaintiffs who are entitled to

SSI and from terminating State AND benefits and services, based on the State's standard of need, to Plaintiffs who are terminated from SSI without providing them with timely and adequate notice in the form set forth in Exhibit B, and the opportunity for a fair State hearing regarding their eligibility, using the applicable State statutory standards governing their AND eligibility.

No security is required of Plaintiffs for issuance of this Order.